NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
                                  :
TINA C. WRIGHT,                   :
                                  :        Civil Action No.
                Plaintiff,        :        07-4102 (NLH)
                                  :
        v.                        :
                                  :        OPINION
MICHAEL J. ASTRUE,                :
COMMISSIONER OF THE SOCIAL        :
SECURITY ADMINISTRATION           :
                                  :
                Defendant.        :
                                  :
```

**Appearances:**
BRIAN G. SMITH
COMMUNITY HEALTH LAW PROJECT
900 HADDON AVE, SUITE 400
COLLINGSWOOD, NJ 08108
*Attorney for Plaintiff*

TOMASINA DIGRIGOLI
SOCIAL SECURITY ADMINISTRATION
26 FEDERAL PLAZA, ROOM 3904
NEW YORK, NY 10278-0004
*Attorney for Defendant*

**HILLMAN, District Judge**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") (collectively "social security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the

Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that plaintiff was not disabled.  For the reasons expressed below, we remand.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Tina Wright was born on January 8, 1960, and is currently 48 years old.  She has a ninth grade education and worked as a certified nursing assistant from 1980 to 1988. Thereafter, she worked part-time as a bartender from 1988 to 1998.  On October 25, 2004, plaintiff began work as a shuttle bus driver and was working in that capacity at the time of the hearing on June 2, 2005.[1]

During the hearing, the ALJ found that although plaintiff's back and foot pain were considered "severe" impairments under the Social Security regulations, and that she

---

[1]  Plaintiff states that she applied for SSI on March 15, 1999, with a protective filing date of February 22, 1999, in which she alleged that her disability began on January 1, 1988. That application was denied initially and on reconsideration. Plaintiff states that she filed timely appeals and a hearing was held on November 17, 2000, in which the ALJ issued an unfavorable decision.  No appeal was filed from that decision.

On December 26, 2002, plaintiff filed applications for DIB and SSI with a protective filing date of October 31, 2002, alleging that she became disabled on August 31, 1998.  Those applications were denied initially and upon reconsideration.  A hearing was held on June 2, 2005, in which the ALJ issued an unfavorable decision.  On August 12, 2005, plaintiff filed a request for review of the decision, and on June 22, 2007, that request was denied by the Appeals Council.  Plaintiff now appeals that denial in this action.

was unable to perform her past relevant work, she had the
residual functional capacity to perform at least a full range of
sedentary work "i.e., she can lift and carry 20 pounds
occasionally and 10 pounds frequently, and can stand for 2 hours,
walk for 2 hours and sit for up to 6 hours during an 8-hour
workday."

Plaintiff argues that: (1) that the ALJ's decision to
disregard the evaluation of the treating physician was not
supported by substantial evidence; (2) the ALJ's finding that she
had the residual capacity to perform the full range of sedentary
work was not supported by substantial evidence; (3) that the ALJ
failed to properly consider her credibility and the credibility
of her sister; and (4) that the ALJ's decision was affected by an
error of law because he improperly interpreted or applied the
term "frequently."  Because the ALJ did not adequately explain in
the record his reasons for rejecting or discrediting the opinion
of plaintiff's treating physician, his reasons for finding that
plaintiff had the residual functional capacity to perform a full
range of sedentary work, or his reasons for finding plaintiff's
testimony not credible, this Court cannot conduct a meaningful
review and, therefore, must remand.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for

judicial review of the Commissioner's decision to deny a
complainant's application for social security benefits.  Ventura
v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court
must uphold the Commissioner's factual decisions where they are
supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383(c)(3); Poulos v. Comm'r of Social Security, 474 F.3d 88, 91
(3d Cir. 2007) (stating that ALJ's application of the law is
reviewed de novo, but ALJ's factual findings are reviewed under
substantial evidence standard)(citations omitted); Fargnoli v.
Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228
F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d
1178, 1182 (3d Cir. 1992).  Substantial evidence means more than
"a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401
(1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229
(1938)).  It means "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  Id.  The
inquiry is not whether the reviewing court would have made the
same determination, but whether the  Commissioner's conclusion
was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.
1988).

        A reviewing court has a duty to review the evidence in
its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.
1984).  "[A] court must 'take into account whatever in the record
fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F.

4

Supp. 277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of</u> <u>Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting <u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." <u>Burnett</u> <u>v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. <u>Id</u>. (citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, <u>Fargnoli</u>, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams</u>, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

### B.   "Disability" under the Social Security Act

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot,

given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

7

therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.   Analysis

Following the five-step process outlined above, the ALJ first concluded that plaintiff did not engage in substantial gainful activity from August 31, 1998 through October 24, 2004. The ALJ did find, however, that starting on October 25, 2004, plaintiff began working as a shuttle bus driver transporting hospital employees to and from the hospital for approximately seven hours per day, in three hour split shifts with rest periods in between, for four days a week, and thus, was engaged in substantial gainful activity and, therefore, not disabled during

that time.  Therefore, the ALJ continued the five step process only as to the time during which he found plaintiff did not engage in substantial gainful activity, August 31, 1998 through October 24, 2004.[2]

At step two, the ALJ found that during the time that the plaintiff was not engaged in substantial gainful activity, plaintiff's back and foot pain were "severe" within the meaning of the Regulations.  However, the ALJ also found that her impairments were not "severe" enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, including the listed impairments in section 1.00 - musculoskeletal impairments, specifically, section 1.02A - major dysfunction of a joint due to any case, section 1.03 - reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, and section 1.04 - disorders of the spine.  The ALJ concluded after reviewing criteria listed in these sections that the plaintiff did have some limitations in her ability to walk but that her limitation did not approach the requisite level of severity described in the listing and, therefore, the plaintiff did not have an impairment that met or medically equaled the criteria of a listed impairment.

---

[2]  Plaintiff does not challenge the ALJ's finding that she was engaged in substantial gainful activity from October 25, 2004, to the present.  Rather, "...it is her position that she was disabled from August 31, 1998 through October 24, 2004."

The ALJ then assessed whether the plaintiff had the "residual functional capacity" to perform the requirements of her "past relevant work" or other work existing in significant numbers in the national economy.  The ALJ summarized his findings over ten pages of single-space type concerning plaintiff's medical history and reports as well as her testimony and that of her sister regarding plaintiff's condition.  The ALJ concluded that although the plaintiff had some back and foot pain and could not perform her past relevant work as either a bartender or nurse's aid, that she had the residual functional capacity to perform a full range of sedentary work, "i.e., she [could] lift and carry 20 pounds occasionally and 10 pounds frequently, and [could] stand for 2 hours, walk for 2 hours and sit for up to 6 hours during an 8-hour workday."

## 1.  The Evaluation of the Treating Physician

Plaintiff argues that the ALJ disregarded the evaluation of her treating physician, Dr. Maria Molina, in which Dr. Molina stated in a report dated March 2004 that plaintiff could not work and listed her limitations in a report dated October 2004.  Plaintiff criticizes the ALJ for assigning little or no weight to Dr. Molina's statement that plaintiff was disabled or Dr. Molina's assessment of plaintiff's residual functional capacity because the ALJ found that "... it appear[ed] to be based upon the claimant's subjective complaints and [was]

10

inconsistent with the objective medical evidence of record, including the doctor's own examinations." Plaintiff argues that the ALJ failed to cite to any objective medical evidence in the record that is contrary to Dr. Molina's statements.

The government argues,[3] and plaintiff does not disagree, that Dr. Molina's determinations regarding plaintiff's residual functional capacity and whether she is "disabled" are issues reserved to the Commissioner and not to the treating physician. See 20 C.F.R. §§ 404.1527(e) and 416.927(e); see also Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994) (finding that "a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not

---

[3]    Plaintiff raises the issue in her reply brief that the government's brief was late. Pursuant to Local Rule 9.1(a)(4), the government's brief was due within thirty days after receipt of plaintiff's brief. Plaintiff's brief was filed and electronically served on March 27, 2008 and, therefore, defendant's brief was due April 28, 2008 (thirty days expired on April 26, 2008 which was a Saturday thereby extending the due date to April 28, 2008). Defendant did not file its brief until June 10, 2008, and did not request nor receive an extension of time within which to file its brief. This Court has the discretion to impose sanctions for failure to abide by the deadlines set forth under the Local Rules, including striking the defendant's brief for untimeliness. See L.R. 9.1(b). We do not condone untimely filings with the Court but recognize that striking the defendant's brief may result in an unduly harsh sanction. Therefore, the Order entered with this Opinion will order defendant to file with the Court a letter requesting nunc pro tunc an extension of time to file its brief, including an explanation of why the brief was filed beyond the deadline. Government counsel is reminded of their obligation to abide by the rules of the Court and to make timely submissions or if necessary to seek reasonable extensions. Merely filing a brief late is not an acceptable alternative.

dispositive of the issue."). Therefore, any discounting by the ALJ of plaintiff's treating physician's opinion as to plaintiff's residual functional capacity or disability status is appropriate as these are determinations reserved to the Commissioner.  Id.

The government further argues that the ALJ gave appropriate reasons for affording Dr. Molina's opinion little weight. The government states that the ALJ found Dr. Molina's opinions and assessment were inconsistent with other evidence.[4] The government also states that the ALJ considered plaintiff's age (thirty-eight years old at the time of alleged onset of disability and forty-five years old at the time of the hearing), education (ninth grade), and work experience (semi-skilled work history but no transferable skills to sedentary work) and found that under the medical-vocational Rules 201.25 and 201.19, 20 C.F.R. Part 404, Subpart P, Appendix 2, plaintiff must be found not disabled.

The law is clear that controlling weight is to be given

---

[4]      The government also argues that Dr. Molina's report was incomplete because the two-page document was numbered "3" and "5" suggesting that pages 1, 2 and 4 were missing.  Plaintiff argues that the ALJ's opinion was not based upon the fact that there were missing pages from the report and therefore it is not a basis upon which to reject the report at this stage of the proceedings.  We agree.  Our function is to review the actual decision made below.  Cf. Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) ("[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

to the treating physician's opinion if that opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).  However, a treating physician's opinion can be given little or no weight if other medically supported evidence in the record is contradictory or supports a different conclusion.  See Pachilis v. Barnhart, 268 F.Supp.2d 473, 483-84 (E.D.Pa. 2003)(finding that decision to reject treating physician's conclusion that plaintiff was disabled in light of other evidence in the record was appropriate); Alexander v. Shalala, 927 F.Supp. 785, 795 (D.N.J. 1995) (stating that "the opinions of non-examining physicians may override a treating source's opinions provided that the former are supported by evidence in the record.") (citations omitted).

According to the ALJ's report, Dr. Molina is a physical medicine and rehabilitation specialist who examined plaintiff in May, July, October, and December 2003, and in February, March, September, and October 2004.  During this time, Dr. Molina found that plaintiff had some coarse tremors of the right hand, low back pain, left heel tenderness, mildly to severely decreased lumbar flexion and mildly decreased lateral flexion, ambulated

with a straight cane, had an "antalgic gait"[5] favoring the left
side, and had a somewhat stooped posture.  She diagnosed
plaintiff with myofascial pain syndrome, history of bilateral
carpal tunnel syndrome, history of plantar and palmar warts
status post multiple foot surgeries, and disc protrusion (mild).
Dr. Molina also prescribed medication for plaintiff's anxiety.

        The ALJ wrote that he assigned little or no weight to
Dr. Molina's reports because they appeared to be based upon the
plaintiff's subjective complaints and inconsistent with the
objective medical evidence of the record, including the doctor's
own examination. (R. 26, 28).  Although the ALJ can discount a
treating physician's report if other medically supported evidence
in the record is contradictory or supports a different
conclusion, the ALJ must specify what that contradictory evidence
is and why it supports a conclusion different from that of the
treating physician.  See Pachilis, 268 F. Supp. 2d at 483-84.
Here, the ALJ concluded that plaintiff's subjective complaints
were inconsistent with the objective medical evidence in the
record but did not specify what other objective medical evidence
he was relying on in reaching his conclusion.  Without the ALJ's
reasoned explanation for his conclusion, this Court cannot

_____

        [5]    An atalgic gait is defined as "a limp in which a phase
of the gait is shortened on the injured side to alleviate the
pain experienced when bearing weight on that side."  See
http://medical-dictionary.thefreedictionary.com/antalgic+gait.

conduct a meaningful review of whether his conclusions are supported by the evidence.  See Burnett, 220 F.3d at 122.  This is not to say that the ALJ's conclusion is incorrect, or ultimately unsupported, only that he must articulate what other doctor's report, or particular statements, or behavior of plaintiff's contradicts the opinion of her treating physician so that assigning Dr. Molina's report little weight is supported by substantial evidence.

## 2. Residual Functional Capacity

Plaintiff states that the ALJ erred in concluding that she could perform the full range of sedentary work.  She argues that the ALJ only relied on the medical reports of the physicians retained by the Social Security Administration and that her medical history shows that she had multiple surgeries on her feet, had painful ambulation, muscle spasms in her legs, muscle spasms in her back, and needed to use splints on both arms and crutches for four weeks.

The government argues that substantial evidence exists to support the ALJ's finding that plaintiff's back disorder and foot condition were not serious enough to prevent her from working.  With regard to her back disorder, the government states that the ALJ relied upon the medical report of Dr. Arthur Marks dated July 29, 1999, which included Dr. Marks' assessment that plaintiff had chronic low back pain with spasm in the left lumbar

15

muscles, but had no evidence of radiculopathy.  The government also argues that the ALJ noted that Dr. Marks found that the "sitting root test"[6] was negative on both sides and that straight leg raising could be performed to 75 degrees on the right and 80 degrees on the left; and that Dr. Marks stated that plaintiff's patellar and Achilles reflexes were symmetric.  The government also states that the ALJ relied upon Dr. Jack DiMarco's report dated August 9, 2000, which stated that plaintiff did not complain of significant low back pain with passive straight leg raising of each lower extremity.  The government further states that the ALJ relied upon Dr. Ken Klausman's report dated April 10, 2003, in which Dr. Klausman found that plaintiff's straight leg raises were negative to ninety degrees bilaterally and that knee and ankle reflexes were equal.

     The government also argues that substantial evidence exists to support the ALJ's finding that plaintiff's foot condition did not prevent her from working.  The government states that the ALJ relied upon Dr. Marks' report in which he concluded that plaintiff was able to walk without a cane but with a markedly "antalgic gait" favoring both feet, but that plaintiff's gait was less antalgic with use of a straight leg cane.  The government also cites to Dr. Marks report in which he

---

[6]  A "sitting root test" is generally performed with a seated patient in a slumped posture, with cervical spine flexion and knee extension.

states that inversion, eversion, strength and dorsiflexion strength of the feet were normal, and quadriceps strength was normal on each side.

The ALJ states that "[t]he radiographic evidence of record does not support a residual functional capacity of less than a full range of sedentary work" and then cites to three exhibits, B-6F:page 7, B-10F:page 3 and B-13F:page 1. (R. 30). The first exhibit, B-6F:page 7, is a radiology report (CT scan of the lumbar spine) in which the radiologist found "[m]ild left sided neural foraminal stenosis" and "[l]eft sided paracentral disc protrusion at the L5-S1 level without evidence of herniated disc." (R. 269).  The second exhibit, B-10F:page 3, is a report from The Cooper Health System, Department of Diagnostic Radiology and Nuclear Medicine in which the radiologist states that plaintiff has "[p]ost op osteotomy on the right distal first metatarsal head and neck region with a screw.  Old injury appearance to the second metatarsal head" and "[a]bsence of the distal left fifth metatarsal consistent with old surgery.  No old fracture or dislocation." (R. 298).  The third exhibit (B-13F:page 1) is a letter from Dr. Molina to Dr. Cline in which Dr. Molina states that her impression of plaintiff's condition is: (1) left L5-S1 disk herniation; rule out radiculopathy as per MRI; (2) myofacial pain syndrome; (3) history of bilateral carpal tunnel syndrome; (4) history of recurrent plantar and palmar wars

status post multiple foot surgeries; and (5) depression/insomnia.

The ALJ's reliance on Dr. Molina's report is somewhat perplexing since he stated that he assigned little to no weight to her opinion.  Also, the Court would benefit from the ALJ's reasoning as to what in the reports led him to conclude that plaintiff could perform the full range of sedentary work.  See Gober, 574 F.2d at 776 (holding that Commissioner must sufficiently explain the weight he has given to exhibits in order for the Court to find that his decision is supported by substantial evidence and decide whether the conclusions reached are rational).  Without clear guidance from the ALJ as to what in the exhibits or reports of the other physicians lead him to conclude that plaintiff has the residual functional capacity to perform a full range of sedentary work, the Court must remand this matter to the ALJ for clarification.  Although the government points to several reports in the record that could provide substantial evidence for the ALJ's conclusion, it is not clear what weight the ALJ assigned to those reports in making his determination as to plaintiff's residual functional capacity, and the Court cannot second guess his reasoning.  See Carter v. Apfel, 220 F.Supp.2d 393, 397 (M.D.Pa. 2000) (stating that the role of the Court is not to augment a Commissioner's decision by supplying missing factual findings) (citing Miller v. Chater, 172 F.3d 303 (3d Cir. 1999); Williams v. Apfel, 98 F.Supp.2d 625

(E.D.Pa. 2000)).

### 3. Credibility Determination

Plaintiff argues that the ALJ failed to properly credit the plaintiff's and her sister's credibility.  The ALJ stated that he found the allegations regarding plaintiff's limitation to be "not entirely credible" because they appeared to be "somewhat exaggerated in view of the objective medical evidence of record." Plaintiff argues that the ALJ failed to state what specific testimony was exaggerated or what specific objective medical evidence of record he was referring to in his statement.

The government argues that the ALJ did properly assess their credibility.  Specifically the government states that in order to establish a disability, a medically determinable impairment must exist which could reasonably be expected to produce the symptoms alleged.  The government argues that plaintiff testified that her carpal tunnel syndrome had not been bothering her lately and that she had no problems with her hands; that plaintiff's sister, Linda Wright, testified that plaintiff was doing better since receiving pain management therapy; that Dr. Mark's report noted that plaintiff admitted her back pain was improved by changing positions and taking medications; that Dr. Marks noted that the results of plaintiff's range of motion testing of her lumbosacral spine were inconsistent with other observed motions of plaintiff while in the examining room; that

19

Dr. Marks found evidence of symptom magnification; and that a physical therapy discharge summary of December 11, 2002, indicated that after treatment plaintiff was no longer limited by back pain.  The government further relies on the ALJ's findings that plaintiff's subjective complaints were inconsistent with her activities and lifestyle in that she cleaned her house, did laundry and shopped for groceries.

"An ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony." Snedeker v. Comm'r of Social Security, 244 Fed.Appx. 470, 474 (3d Cir. 2007) (citing Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); SSR 96-7p). "Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence." Id. (citing Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979)). Here, it is not clear what testimony of plaintiff's the ALJ found not credible.  In other words, he has not explained why he found plaintiff's testimony exaggerated in light of the objective medical evidence of record.  In order for the Court to provide a meaningful review, the ALJ should specify what objective medical evidence in the record contradicts the statements made by plaintiff and/or plaintiff's sister.  See Gober, 574 F.2d at 776.

### 4.   Ability to Perform Tasks "Frequently"

Plaintiff states that the ALJ found that she can stand

20

for two hours and walk for two hours during an eight hour
workday.  She argues that the suggestion that she could stand and
walk for a total of fours hours is incorrect because the two
forms that the ALJ relied on in support of his statement states
that plaintiff could "[s]tand and/or walk (with normal breaks)
for a total of ... at least 2 hours in an 8-hour workday."
Plaintiff maintains that the interpretation of the forms is that
she could stand and/or walk for a total of two hours, not four
hours.

          Plaintiff also argues that the ALJ erred in concluding
that she could lift and carry ten pounds "frequently."  Under
Social Security Ruling 83-10, "occasionally" is defined as
occurring from very little up to one-third of the time, and
"frequent" is defined as occurring from one-third to two-thirds
of the time.  Plaintiff argues that if plaintiff is found to be
able to lift and carry ten pounds frequently, she must be able to
walk for one-third, or two hours and forty minutes, to two-
thirds, or five hours and twenty minutes, of the time.  Plaintiff
argues that if the ALJ found that she can only walk for two hours
during an eight hour day that his conclusion that she can carry
ten pounds frequently is an error of law.

          With regard to the ALJ's statement that she can stand
for two hours and walk for two hours, it does not appear that the
ALJ concluded that she could walk and stand for a total of four

hours.  The ALJ found that she could "stand for 2 hours, walk for 2 hours and sit for up to 6 hours during an 8-hour workday."  If plaintiff is able to sit for six hours in an eight hour workday, that only leaves two hours for walking or standing.  Therefore, while the statement that she could "stand for 2 hours, walk for 2 hours" may not be as clear as "stand and/or sit" for two hours, the total time allotted by the ALJ for standing and sitting totaled two hours, not four.

Likewise, the ALJ's use of the term "frequently" rather than "occasionally" is not grounds, by itself, for remand.  Generally, lifting, carrying, walking and standing are done "occasionally" at sedentary jobs.  Under 20 C.F.R. § 404.1567(a), sedentary work is described as:

> ... involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Based on the above definition it appears that a requirement that someone carry ten pounds frequently is inconsistent with the definition of sedentary work which requires

that carrying is performed occasionally.[7]  However, this discrepancy does not disturb the findings of the ALJ that plaintiff can perform the full range of sedentary work.  The finding that plaintiff could carry ten pounds frequently is beyond that necessary for the full range of sedentary work.  Thus, even if the ALJ is incorrect that plaintiff can carry ten pounds frequently rather than occasionally, the discrepancy still permits a finding that she can perform "at least a full range of sedentary work" as defined under 20 C.F.R. § 404.1567(a).  In other words, even if the ALJ improperly applied the term frequently so that plaintiff should have been found only to be able to carry ten pounds "occasionally" in an eight hour day, she would still be able to perform sedentary work with the limitations as described by the ALJ.

        Nonetheless, since this matter is being remanded to allow the ALJ to provide specific reasoning for his conclusions so that this Court can conduct a meaningful review, the ALJ should also address the use of the terms "frequently" and "occasionally" in describing plaintiff's range of sedentary work.

---

        [7]  The government states that plaintiff's argument implies that "carrying" requires "walking."  While the definition of "carry" involves many meanings, the meaning most appropriate to this discussion is "to move while supporting." See http://www.merriam-webster.com/dictionary/carry.   In this sense, and in the sense intended by the plaintiff, carrying explicitly requires walking.

### III.  <u>CONCLUSION</u>

For the reasons expressed above, the decision of the ALJ is reversed and this matter remanded for further proceedings consistent with this Opinion.  An accompanying Order will be issued.


                                    ____s/Noel L. Hillman____
                                    NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey

Dated: November 24, 2008